UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEEPIKA REDDY; and PRATAP REDDY,

         Appellants,      3:18-CV-1197
                 (GTS)
v.

IGOR Y. MELNIK,

         Appellee.
_____

APPEARANCES:               OF COUNSEL:

DEEPIKA REDDY
 *Pro Se*, Appellant-Creditor
7338 Dartmoor Crossing
Fayetteville, NY 13066

PRATAP REDDY
 *Pro Se*, Appellant-Creditor
7338 Dartmoor Crossing
Fayetteville, NY 13066

WHITELAW & FANGIO          MARY LANNON FANGIO, ESQ.
 Counsel for Appellee-Debtor
247 West Fayette Street
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## **<u>DECISION and ORDER</u>**

   Currently before the Court, related to a bankruptcy proceeding commenced by Igor Y. Melnik ("Appellee" or "Debtor"), is an appeal by Deepika Reddy and Pratap Reddy ("Appellants" or "Creditors") from a Decision and Order by United States Bankruptcy Judge Diane Davis dated September 28, 2018, dismissing their Complaint seeking a finding that the debts owed to them by Debtor are non-dischargable. (Dkt. No. 3; Dkt. No. 4, Attach. 1.) For the reasons that follow, the Court affirms the Decision and Order of Bankruptcy Judge Davis.

## I. RELEVANT BACKGROUND

### A. Procedural History

Although the Court assumes that the parties are familiar with the procedural history in this case, a brief summary is warranted. On February 3, 2017, Debtor filed his Chapter 7 petition with the Bankruptcy Court. (Dkt. No. 3, at 8 [Decision and Order filed Sept. 28, 2018].) On May 1, 2017, Creditors filed the Complaint that is the basis of this action. (*Id.* at 3 [attaching page "2" of Dkt. Sheet].) On March 13, 2018, a hearing was held at which witness testimony was taken, and after which the Bankruptcy Court reserved decision pending the submission of closing memoranda by the parties. (*Id.* at 5 [attaching page "4" of Dkt. Sheet].)

### B. The Bankruptcy Court's Decision and Order

On September 28, 2018, United States Bankruptcy Judge Diane Davis issued a Decision and Order dismissing Creditors' Complaint for failure to meet their burden to prove that one of the non-dischargeability exceptions of 11 U.S.C. § 523 applied. (*See generally,* Dkt. No. 3, at 7-35 [Decision and Order filed Sept. 28, 2018].) More specifically, Bankruptcy Judge Davis found that (a) as to the claim pursuant to 11 U.S.C. § 523(a)(2)(A), Creditors had not shown that the elements of materiality, reliance, or intent had been met, and (b) as to the claim pursuant to 11 U.S.C. § 523(6), Creditors had not shown that Debtor acted willfully and maliciously in injuring them through his action of closing the dental practice and transferring patient files to another practice. (*Id.* at 26-37.)

More specifically, as to the claim pursuant to 11 U.S.C. § 523(a)(2)(A), Bankruptcy Judge Davis found that (a) Debtor's marital status was not material to Creditors' decision to sell him the practice and/or finance that sale given the use of a professional broker to mediate the

transaction, (b) there was no reliance on the representation of marital status before or at the time of the transaction, and (c) there was no evidence of fraudulent intent based on Debtor's credible testimony that he wanted to run a successful practice at the time he entered into the transaction with Creditors, the fact that he discovered that the practice was not the "turn-key" operation he had been led to expect only after the sale and financing were completed, and the fact that he made payments on the lease and Note and attempted to resell the practice when he could no longer afford it. (*Id.* at 26-29.)

As to the claim pursuant to 11 U.S.C. § 523(6), Bankruptcy Judge Davis noted that Debtor did not engage in the alleged willful and malicious conduct until after Creditors had commenced eviction proceedings against him, and that there had been no agreement between Debtor and Creditors on an offer from another dentist to buy the practice. (*Id.* at 30-31.) Bankruptcy Judge Davis additionally found that, although Debtor's action in transferring the patient records might have been in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), any such illegality does not automatically render the action and subsequent injury willful and malicious. (*Id.*)

### C. Parties' Arguments on Appeal

#### 1. Creditors' Brief

Generally, Creditors assert three arguments. (Dkt. No. 12, at 12-28 [Creditors' Mem. of Law].) First, Creditors argue that Bankruptcy Judge Davis erred by conflating the decision to sell the practice with the decision to finance the practice. (*Id.* at 12-14.) More specifically, Creditors argue that the sale of the practice to Debtor was completely separate from the agreement to finance that sale. (*Id.* at 13-14.) Creditors argue that this distinction is important


because, although Debtor's marital status was irrelevant to the decision to sell the practice to Debtor (given that only a licensed dentist can own or control professional corporation under New York law and Debtor's ex-wife is not a licensed dentist), Debtor's marital status would, and did, play a significant role in their decision to finance that sale. (*Id.* at 12-14.)

Second, Creditors argue that Bankruptcy Judge Davis erred in finding that they failed to establish a prima facie case of any of the relevant forms of fraudulent activity under 11 U.S.C. § 523(a)(2)(A). (*Id.* at 14-22.) More specifically, Creditors argue the following: (a) Debtor made multiple misrepresentations, including as to his marital status (i.e., he introduced Lidiya Melnik-Stuart as his wife although they were not legally married at the time), his outstanding debts (i.e., he did not inform them that he had to pay child support and alimony), and his ability to repay the loan (i.e., Creditors were under the impression that their financing would be only short-term in that it would be repaid once Debtor was able to secure a bank loan, which included an understanding that Debtor would continue to seek a bank loan); (b) these misrepresentations were made intentionally and with the purpose of deceiving Creditors in that they would not have financed the sale absent these misrepresentations, and Debtor had no good-faith intention to repay the loan based on the fact that he attempted to sell the practice so soon after getting it; (c) they relied on Debtor's misrepresentations in that they were still "on the fence" about financing Debtor until he assured them that his wife would help with repayment and would move to Syracuse from New York City to work in the practice to reduce overhead cost; and (d) they suffered loss and damages as a result of Debtor's misrepresentations, in particular because they relied on Debtor's ex-wife's income as part of their decision. (*Id.*)

Third, Creditors argue that Bankruptcy Judge Davis erred in finding that Debtor's conduct was not willful and malicious pursuant to 11 U.S.C. § 523(6). (*Id.* at 23-29.) More specifically, Creditors argue that, because the practice itself (including the patient files) were collateral for his loan from Creditors, his act of closing the practice and transferring those files was a willful and malicious attempt to destroy any remaining value in the practice and to prevent Creditors from being able to sell the practice to anyone else to mitigate their damages (although they argue that, under New York law, the landlord of a commercial lease has no duty to mitigate his or her damages). (*Id.* at 23-27.) Creditors also argue that Debtor's actions were illegal in that they violated HIPAA. (*Id.* at 27-28.)

### 2. Debtor's Response to Creditors' Brief

As an initial matter, Debtor argues that, beyond the findings of Bankruptcy Judge Davis, Creditors have waived multiple issue raised in their Statement of Issues on appeal by failing to address them in their brief. (Dkt. No. 13, at 14-18 [Debtor's Opp'n Mem. of Law].) In particular, Debtor argues that (a) Creditors' first issue is merely a general assertion that Bankruptcy Judge Davis erred in finding the debts dischargable, which is redundant of a more specifically raised issue, (b) Creditors' second issue (i.e., that Bankruptcy Judge Davis erred in finding that Debtor had no fiduciary duty to disclose his financial status) is not addressed in their brief, (c) Creditors' third issue (i.e., that Bankruptcy Judge Davis erred in finding that Debtor's statements about his marital status were not material) is not specifically addressed in their brief and deposition testimony contradicts any assertion of materiality, (d) Creditors' fourth issue (i.e., that Bankruptcy Judge Davis erred in treating the sale of the practice and lease of the building as a single debt) is not addressed in their brief and is nonetheless contradicted by Bankruptcy Judge

Davis' clear statement that, although the debts were separate, the analysis for both was the same and so they were considered together; (e) Creditors' fifth issue (i.e., that Bankruptcy Judge Davis erred in failing to apply New York law as to commercial leases) is moot because such laws are irrelevant to this case; and (f) Creditors' sixth issue (i.e., that Bankruptcy Judge Davis abused her discretion by allowing hearsay testimony into evidence) is not addressed in their brief. (*Id*.)

Apart from addressing the specific issues raised in the Statement of Issues on appeal, Debtor also asserts three arguments in opposition to the arguments raised in Creditor's brief. (*Id.* at 18-28.) First, Debtor argues that Bankruptcy Judge Davis did not conflate the decision to sell the practice and the decision to finance the sale, arguing in particular that Creditors have not argued how any such conflation would have impacted the outcome in this case. (*Id.* at 18-20.) More specifically, Debtor argues that (a) Creditors have not cited any evidence of such a conflation, (b) Bankruptcy Judge Davis specifically noted both separately in her statement of facts and analysis, and (c) Creditors have not offered any evidence to show that Debtor knew that Creditors were "on the fence" about financing during the sale negotiations. (*Id.* at 19-20.)

Second, Debtor argues that Bankruptcy Judge Davis correctly determined that Creditors failed to show that Debtor engaged in any form of fraudulent activity under 11 U.S.C. § 523(a)(2)(A). (*Id.* at 21-26.) More specifically, Debtor argues that (a) the majority of the misrepresentations were in fact alleged to be made by the parties' broker, not Debtor, (b) Creditors have offered no evidence that Debtor informed them that his ex-wife would help with repayment of the loan, and their assertion that Debtor told them he would be working five days at the practice is clearly contradicted by the record, (c) Creditors have not provided sufficient evidence to contradict Bankruptcy Judge Davis' finding that Debtor's marital status was not

material or that he had no intention to repay the loan at the time it was entered into, and (d) Creditors have failed to argue that Debtor owed them a duty (fiduciary or otherwise) to disclose his personal financial obligations, noting that Creditors have both admitted that they never requested nor received financial information from Debtor before accepting his promissory note. (*Id.*)

Third, Debtor argues that Bankruptcy Judge Davis did not err in finding that his conduct was not willful and malicious, arguing that Creditors' argument on this point is merely a verbatim repetition of the arguments from their pre-decision memorandum and therefore does not address Bankruptcy Judge Davis' actual findings. (*Id.* at 27-28.)

### 3. Creditors' Reply Brief

Generally, in reply to Debtor's opposition, Creditors assert three arguments, the majority of which are simply a verbatim repetition of their arguments from their memorandum of law. (Dkt. No. 16, at 5-11 [Creditors' Reply Mem. of Law].) As to their new arguments, Creditors argue that (a) Bankruptcy Judge Davis erred in failing to find a fiduciary duty on Debtor to reveal his financial status based on the privity of contract between Debtor and Creditors, which they assert creates a duty under New York law, and (b) that Debtor's interpretation of the case they rely on related to a landlord's duty to mitigate on a commercial lease under New York is "erroneous" (without explaining why it is erroneous). (*Id.* at 5-6, 10.)

## II. GOVERNING LEGAL STANDARD

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a). On an appeal, "a district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Verna v. U.S. Bank Nat'l Ass'n*, 15-CV-

1127, 2016 WL 5107115, at *2 (N.D.N.Y. Sept. 20, 2016) (Kahn, J.) (citing former Fed. R. Bankr. P. 8013); *accord*, *W. Milford Shopping Plaza, LLC v. The Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 14-CV-4170, 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015).[1] The bankruptcy court's legal conclusions are subject to *de novo* review, while factual findings are reviewed for clear error. *Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432, 435 (2d Cir. 2003); *In re Colony Hill Assoc.*, 111 F.3d 269, 273 (2d Cir. 1997). The court reviews mixed questions of law and fact "either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.)*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 316 n.11 [2d Cir. 2009]).

**III.   ANALYSIS**

After carefully considering the matter, the Court finds that the September 28, 2018, Decision and Order of Bankruptcy Judge Davis should be affirmed for the reasons that follow.

As an initial matter, the Court acknowledges Debtor's argument that Creditors failed to address in their memoranda a number of the issues listed in their Statement of Issues for this appeal. Although the failure to address an argument generally results in the waiver of that argument, the Court has attempted to consider those issues to the extent they are relevant to Creditors' appeal out of special solicitude to their *pro se* status.

---

[1] Although Fed. R. Bankr. P. 8013 was amended in 2014 and no longer explicitly states, *inter alia*, that a district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree," "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Great Atl. & Pac. Tea Co.*, 2015 WL 6395967, at *2 & n.1.

As to Creditors' argument that Bankruptcy Judge Davis erroneously combined the two separate debts, the Court finds this argument to be without merit. Bankruptcy Judge Davis specifically noted in a footnote that (a) there were separate debts due under the practice purchase agreement and under the building lease, (b) the parties had not acknowledged the separateness of those debts throughout the course of litigation, and (c) the analysis was the same for both debts. (Dkt. No. 3, at 18 n.6 [Decision and Order filed Sept. 28, 2018].) Bankruptcy Judge Davis therefore analyzed the debts as one aggregate debt. (*Id.*) Creditors have not offered any arguments, evidence, or legal authority to suggest that Bankruptcy Judge Davis' analysis was erroneous or would have been different had she explicitly considered the debts separately. Rather, as will be discussed below, Bankruptcy Judge Davis' factual findings and weighing of the evidence related to whether Creditors have shown nondischargeability as to the debts are not clearly erroneous.

### A. Creditors' Claim Pursuant to 11 U.S.C. § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2)(A), "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "To establish that a debt is not subject to discharge under [§ 523(a)(2)(A)], a creditor must prove five elements: (1) the debtor made a misrepresentation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with intent to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor was injured by the representation

and suffered damages as a result." *In re Williams*, 579 B.R. 314, 323 (S.D.N.Y. Bankr. 2016). "The burden of proof in a nondischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfied the requirements of one of the discharge exceptions." *In re Williams*, 579 B.R. at 323.

More specifically, to establish a debt as non-dischargeable due to false pretenses, the creditor must show (1) an implied misrepresentation or conduct by the debtor, (2) that the debtor promoted knowingly and willingly, (3) that created a contrived or misleading understanding of the transaction on the part of the creditor, (4) which wrongfully induced the creditor to advance money, property, or credit to the debtor. *In re Cahill*, 15-72418, 2017 WL 713565, at *6 (E.D.N.Y. Bankr. Feb. 22, 2017). To establish a debt as non-dischargeable due to a false representation, the creditor must show that (1) the debtor made a false or misleading statement, (2) with the intent to deceive, (3) in order for the creditor to turn over money or property to the debtor. *In re Cahill*, 2017 WL 713565, at *6. Thus, the difference between an action for a false pretense and one for a false representation is that the latter requires an explicit, definable statement by the debtor, while the former involves conduct that makes an implication that is misleading. Regardless of which fraudulent basis from Section 523(a)(2)(A) the creditor is relying on, he must prove "a false representation, scienter, reliance, and harm." *In re Cahill*, 2017 WL 713565, at *7 (citing *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 [2016]; *Evan v. Ottimo*, 469 F.3d 278, 283 [2d Cir. 2006]).

As discussed previously, Bankruptcy Judge Davis found that Creditors had not met their burden to establish the elements of materiality, reliance, or intent.

In their memoranda, Creditors have argued there were three misrepresentations and/or omissions on which they allegedly relied: (1) Debtor's martial status to Lidiya Melnik-Stuart, (2) that the financing they were extending to Debtor was short-term (i.e., that Debtor would continue to seek financing from a bank), and (3) Debtor's failure to disclose that he owed obligations to pay child support and alimony. Bankruptcy Judge Davis' decision focused on Debtor's marital status; yet Creditors also failed to establish nondischargeability as to these other alleged misrepresentations and omissions because they have not established that it was Debtor who made any misrepresentation or omission as to these subjects. As to the financing, the deposition and trial testimony in the record on appeal indicates that representations as to the supposedly short-term nature of that financing were made, not by Debtor, but by broker Henry Schein Professional Practice Transitions ("Henry Schein") and its local representative Donna Bambrick. (Dkt. No. 10, Attach. 20, at 46-48, 50-51, 53; Dkt. No. 10, Attach. 21, at 29-31, 36-37.) Creditors therefore have not even established that Debtor himself made any misrepresentations or omissions as to the nature of the financing Creditors provided.

As to Debtor's alleged failure to disclose his obligation to pay child support and alimony, Creditors admit that neither of them asked Debtor for information about such obligations specifically or, more generally, for any financial information at all; rather, Creditors testified that they relied on representations and information about Debtor's financial situation and creditworthiness provided by Ms. Bambrick and Henry Schein. (Dkt. No. 5, Attach. 10, at 77, 94, 190-91; Dkt. No. 10, Attach. 20, at 48-49, 65; Dkt. No. 10, Attach. 21, at 12, 31-33.) Nor do Creditors offer any evidence that Debtor withheld (intentionally or otherwise) information about those obligations from Ms. Bambrick and Henry Schein. Consequently, Creditors have not

shown that they relied on any misrepresentation or omission made by Debtor specifically as to his financial obligations.[2]

As to Debtor's misrepresentation of his marital status, the Court finds firstly that Creditors have not established that Debtor made statements suggesting he was married to Ms. Melnik-Stuart with the intent to deceive Creditors into both selling him the practice and extending him financing. "[F]raudulent intent cannot be presumed," and any "permissible inference will be negated where the debtor comes forward with some evidence that he did not intend to deceive the plaintiff." *In re Williams*, 579 B.R. at 323.

The Court notes that Bankruptcy Judge Davis specifically found that, as to the issue of intent, Debtor was a credible witness. (Dkt. No. 3, at 29 [Decision and Order filed Sept. 28, 2018].) As with all of Bankruptcy Judge Davis' factual findings, her credibility findings are reviewed for clear error and this Court "must give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Skins and Leather Co., Inc. v. Twin City Leather Co., Inc.*, 246 B.R. 743, 749 (N.D.N.Y. 2000) (Pooler, J.). After reviewing the

---

[2] Additionally, Creditors did not include any argument regarding a breach of duty to disclose financial information in their written closing statement to Bankruptcy Judge Davis, nor is it apparent that they otherwise raised this issue before Bankruptcy Judge Davis. (Dkt. No. 4, Attach. 9.) In fact, although they included breach of fiduciary duty as an issue in their Statement of Issues for this appeal, it was not until their reply memorandum of law that they presented any arguments on that issue. (Dkt. No. 12 [Creditors' Mem. of Law]; Dkt. No. 16 [Creditors' Reply Mem. of Law].) Creditors have therefore waived this argument, despite their *pro se* status, because they do not dispute that they never requested this information and there is no indication in the record that Debtor should have had reason to believe that the information Creditors now assert needed to be disclosed was material to their business relationship. *See In re Grubb & Ellis Co.*, 523 B.R. 423, 440 (S.D.N.Y. 2014) (noting that the appellants had waived an argument that the bankruptcy court exceeded its jurisdiction by failing to raise that argument until its reply brief). The Court also notes that, although Creditors framed their issue as an argument that Bankruptcy Judge Davis erred in finding that Debtor had no fiduciary duty to reveal his status, it does not appear that Bankruptcy Judge Davis made any such finding. (*See generally,* Dkt. No. 3 [Decision and Order filed September 28, 2018].)

evidence, the Court cannot say that Bankruptcy Judge Davis clearly erred in relying on Debtor's testimony in support of her finding that he did not have an intent to defraud Creditors at the time he entered into the sale of the practice, the financing of that sale, or the lease. Specifically, even if the evidence shows that Debtor became quickly disillusioned about the practice after the documents were executed, there is no evidence that he entered into those transactions without a good-faith intent to comply with his obligations under the contract and to repay the loan extended by Creditors. Rather, actions taken by Debtor and his ex-wife after those transactions suggest that they did in fact have an initial intent to work in the practice as expected and comply with the terms of the agreement: Debtor paid two payments on the agreement, he had applied for insurance company affiliations at the practice location before the sale was even final, both Debtor and his ex-wife spent time working at the practice, Debtor spent money on advertising for the practice, and Debtor's ex-wife left her job in New York City to move to an apartment they had rented in Syracuse. (*See, e.g.*, Dkt. No. 4, Attach. 10, at 200-02, 208; Dkt. No. 10, Attach. 12, at 16-17, 33, 86-87, 287-88, 291-92, 323-24, 469.) The evidence also shows that Ms. Melnik-Stuart's decision to leave the practice was based on events occurring after the sale and financing, as was Debtor's inability to pay back the loan; the fact that such things happened are not indicative of a lack of good-faith intent at the time the agreements were entered into. (Dkt. No. 4, Attach. 10, at 196-96; Dkt. No. 10, Attach. 12, at 21-26, 28.) Additionally, Debtor testified that, although he and Ms. Melnik-Stuart were not legally married at the relevant time, they continued to have a relationship and were in the process of attempting to reconcile their differences, and that he routinely referred to Ms. Melnik-Stuart as his wife. (Dkt. No. 4, Attach. 10, at 139-43, Dkt. No. 10, Attach. 12, at 181-82, 299-303.) Debtor also testified that their

intention was to run the business together, despite the fact that they were not married.  (*Id.* at 143-44.)  Without any evidence establishing (or even suggesting) that Debtor held Ms. Melnik-Stuart out as his wife specifically for the purpose of inducing Creditors to sell him the practice, lease him the office space, and extend him financing, the Court finds, as Bankruptcy Judge Davis did, that Creditors have not established the intent element as to the representations about Debtor's marital status.

Similarly, the Court is not convinced that Creditors have met their burden to show that the misrepresentations about Debtor's marital status were material or that Creditors relied on them in choosing to both sell the practice and extend financing to debtor.  As Bankruptcy Judge Davis seems to have noted, there is some inconsistency in Creditors' testimony at their depositions and at the trial as to whether and to what extent Debtor's marital status induced them to enter into both the sale of the practice and financing of that sale and/or the lease.  For example, at the trial, Dr. Reddy testified essentially that Debtor's marital status was material to the decision as to whether they would finance him, but not in the actual sale of the practice (the position Creditors assert in their memoranda); and yet, in her deposition, Dr. Reddy stated that his marital status was important to her decision to sell the practice, but that the financing decision was based on Henry Schein's representations about Debtor's financial status and Ms. Melnik-Stuart's statements about how much they wanted the practice.  (Dkt. No. 4, Attach. 10, at 70-75, 81-82, 89, 92; Dkt. No. 10, Attach. 20, at 39-40, 63-67, 78.)  Similarly, Dr. Reddy's husband testified at the trial that Debtor's marriage to Ms. Melnik-Stuart was a "requirement" for financing the practice; yet in his deposition he states that, although Ms. Melnik-Stuart's intention to work in the practice was "one of the reasons" they agreed to work with Debtor,

having a wife who was a hygienist was never a requirement. (Dkt. No. 4, Attach. 10, at 96-97; Dkt. No. 10, Attach. 21, at 22-23.) Such inconsistencies undermine Creditors' credibility.

Creditors argue essentially that they relied on Debtor's marital status because (a) it reduced the risk that Debtor might leave Syracuse, (b) it meant that Ms. Melnik-Stuart, a hygenist, would be committed to working at the practice, and (c) her income was relevant to repayment of the loan. The Court notes first that whether Debtor and Ms. Melnik-Stuart were married seems to have little relevance to whether Debtor would stay in Syracuse after buying the practice. Similarly, Creditors' argument that they relied on the fact of Debtor's marital status because it meant that Ms. Melnik-Stuart would be working at the practice is unpersuasive because the evidence in support of that argument indicates that Ms. Melnik-Stuart intended to work at the practice as represented despite the fact that she was not married to Debtor at the time. It therefore appears that Creditors relied not on Debtor's marital status *per se* but on representations that Ms. Melnik-Stuart would be working at the practice in certain capacities to make things run smoothly and reduce overhead. (Dkt. No. 4, Attach. 10, at 70, 74-75; Dkt. No. 10, Attach. 20, at 63-65.) Given that there is no evidence to support that representations as to Ms. Melnik-Stuart's desire and intent to work in the practice at the time of the sale, lease, and financing were false or misleading, Creditors cannot show that there was any misrepresentation beyond the bare fact of marital status, and, as already discussed, Debtor's marital status itself was not actually what Creditors relied on.

Additionally, as to Creditors' assertion that Debtor notified them that his wife would help in the repayment of the loan (despite not being a signatory on or party to that loan), there is simply no evidence supporting such an assertion. Debtor testified that Ms. Melnik-Stuart spoke

with Ms. Bambrick about her willingness to "put some money into the business if it's necessary," but there is no evidence that Debtor ever made any representation to Creditors that Ms. Melnik-Stuart was going to be helping to pay the loan. (Dkt. No. 4, Attach. 10, at 154-55, 157-59, 163-65, 188-89; Dkt. No. 10, Attach. 12, at 32-33, 180, 307.)

Consequently, the Court finds that Creditors also have not shown that Debtor's marital status was material or that Creditors relied on it when agreeing to sell the practice, lease the officer space, or finance that sale. The Court therefore finds that Bankruptcy Judge Davis' findings on this matter should be affirmed.

### B. Creditors' Claim Pursuant to 11 U.S.C. § 523(a)(6)

Pursuant to Section 523(a)(6) of Title 11 of the United States Code, "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Second Circuit has noted that Congress defined "willful" in this context as "deliberate or intentional," while "malicious" means "wrongful or without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996). To satisfy the willful requirement, Plaintiff must show that the injury itself was willful, not merely the act leading to the injury; recklessly or negligently inflicted injuries will not suffice. *In re Busch*, 311 B.R. 657, 665-66 (N.D.N.Y. Bankr. 2004) (Littlefield, B.J.). "Malice may be constructive or implied," and "[i]mplied malice may be demonstrated by the acts and conduct of the debtor in the context of the surrounding circumstances." *In re Stelluti*, 94 F.3d at 87-88.

Plaintiff has the burden of establishing the elements of 11 U.S.C. § 523(a)(6) and "the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." *In re Busch*, 311 B.R. at 665.

Creditors argue that Debtor willfully and maliciously injured them by sending letters to patients informing them that he was closing the practice and transferring their patient files to a nearby Aspen Dental location because such action destroyed the remaining goodwill in the practice and made it impossible for Creditors to resell the practice to someone else. Bankruptcy Judge Davis concluded that Debtor's actions occurred (a) after Creditors commenced eviction proceedings against him and after rejecting the final offer related to the proposed sale of the practice to Dr. Nolan, and (b) in a context that did not suggest tortious conduct by Debtor. (Dkt. No. 3, at 34-35 [Decision and Order filed Sept. 28, 2018].)

Creditors' argument is replete with generalizations and unsubstantiated personal attacks against Debtor's character, but devoid of any citation to actual evidence supporting their claim. Additionally, Creditors' statement that Debtor was "aware that there was a new buyer for the practice," at the time he sent out letters to all patients announcing the closing of the practice is not an accurate representation of the facts of this case. (Dkt. No. 12, at 23 [Creditors' Mem. of Law].) The "new buyer" for the practice, Dr. Nolan, had not yet entered into a contract and negotiations were still ongoing at the time Debtor sent out the letters. Debtor has testified and stated on multiple occasions that he was willing to sell the practice to someone else, but that Creditors imposed conditions on Debtor related to the sale offer (including that Debtor would be liable for the entire amount of the debt if Dr. Nolan failed to pay, that Debtor would be required to pay a large sum up-front of all past due amounts plus any rent and fees until the sale was

finalized, and that Debtor must guarantee that he would not file for bankruptcy) to which Debtor could not agree. (*See, e.g.*, Dkt. No. 10, Attach. 12, at 386-90, 394-95, 454-55.) Debtor testified in particular that it was impossible for him to accept Creditors' conditions because he did not have sufficient money to pay the past due amounts up-front as required and therefore could not agree to the sale. (*Id.* at 436, 438-39, 453-54, 468-69.) The Court notes that neither party disputes that the offer obtained through negotiation with Dr. Nolan was substantially less than Debtor had contracted to pay for the practice and lease; and Debtor acknowledges that he was willing to pay the difference in those amounts in order to satisfy his obligations. Additionally, the Court notes that there was no way for Debtor to continue working in the practice because, by the time of these negotiations with Dr. Nolan, Debtor had been evicted from the building through proceedings initiated by Creditors. (*Id.* at 443-44.) Given the testimony and evidence supporting a finding that Debtor was unable to continue working in the practice and was financially unable to comply the conditions on the proposed sale imposed by Creditors, the decision to close the practice appears to have been more of a matter of practical necessity than a malicious action. There simply is no evidence to establish that Debtor's action in closing the practice was a willful attempt to injure Creditors by destroying the goodwill of the practice. Nor have Creditors cited any evidence (circumstantial or otherwise) to support their assertion that "Debtor knew that once the patients were dismissed from the practice, the Practice cannot be sold and it would be impossible to rent the building, since the building was designed and equipped for a dental office." (Dkt. No. 12, at 24 [Creditors' Mem. of Law].)

Similarly, the evidence as a whole does not suggest that Debtor was acting maliciously given the attempts he made to negotiate a sale of the practice that was acceptable to Creditors; it

was only after Debtor and Creditors failed to come to a resolution that Debtor closed the practice and transferred the patient files. Construing matters liberally in favor of Debtor, the Court cannot conclude, based on the evidence before it, that Debtor engaged in these actions with the wilful intent to injure Creditors, and therefore Creditors' claim must fail.

Finally, the Court notes that Creditors' discussion of New York commercial lease law is inapplicable to this case, given that Debtor has never argued that Creditors had any duty to mitigate their damages. Nor are any mitigation efforts that Creditors took of their own volition relevant to the question of whether Debtor acted in a malicious way that caused a willful injury to Creditors. Similarly, whether Debtor's actions in transferring the patient files to Aspen Dental violated HIPAA is immaterial since (a) there is no requirement that a debtor's action be unlawful to be willful and malicious, and (b) the injury caused by a HIPAA violation is to the patients affected, not Creditors.

For all of the above reasons, the Court finds that Creditors have not met their burden to establish the elements of 11 U.S.C. § 523(a)(6), and Bankruptcy Judge Davis' findings on this issue must be affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Bankruptcy Judge Davis' Decision and Order (Dkt. No. 3) is **AFFIRMED**; and it is further

**ORDERED** that Creditors' appeal is **DENIED** and **DISMISSED**.

Dated: July 2, 2019
     Syracuse, NY

                                                Hon. Glenn T. Suddaby
                                                Chief U.S. District Judge